IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

COREY J. LAMBERT,

       Plaintiff,

vs.                                                    Civil Action No. _3:25-cv-18 (GROH)_

> ELECTRONICALLY
> FILED
> Feb 10 2025
> U.S. DISTRICT COURT
> Northern District of WV

PTLM. COBY ENGLE, individually,
PFC. JOSE BOURSIQUOT, individually,
and CITY OF MARTINSBURG, a political
subdivision in the State of West Virginia,

       Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, the Fourth Amendment to the United States Constitution, arises out of the Defendants' unreasonable seizure of the Plaintiff on or about February 10, 2023, in Berkeley County, West Virginia, within the Northern District of West Virginia.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

1.    The Plaintiff was at all times relevant hereto a resident of Berkeley County, West Virginia, within the Northern District of West Virginia.

2.    Defendant Engle was at all times relevant hereto a police officer for the Martinsburg Police Department, having the address of 125 West Race Street, Martinsburg, West Virginia 25401, which is under the City of Martinsburg, and was at all times relevant hereto

1

acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

3.      Defendant Boursiquot was at all times relevant hereto a police officer for the Martinsburg Police Department, having the address of 125 West Race Street, Martinsburg, West Virginia 25401, which is under the City of Martinsburg, and was at all times relevant hereto acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

4.      Defendant City of Martinsburg, a municipal corporation, is a political subdivision of the State of West Virginia, having an address of 232 North Queen Street, Martinsburg, West Virginia 25401, and as such, is liable for the negligent conduct of its agents and employees, including the employees of the Police Department, so long as that conduct was carried out within the scope of their employment. See West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, et seq.

5.      The conduct alleged herein to have been committed by employees and/or agents of Defendant City of Martinsburg are hereby alleged to have been committed by said agents and/ or employees acting in the scope of their employment and authority.  The causes of action asserted herein against Defendant City refer to acts performed by agents and employees of said Defendant political subdivision, rather than the formulation and implementation of policy related to how law enforcement and police protection are provided.

## FACTS

6.      On or about February 10, 2023, the plaintiff, Corey J. Lambert, was traveling east on Mall Drive in Martinsburg, West Virginia, when he passed a Martinsburg Police cruiser traveling west.  Exercising his First Amendment rights to communicate his disapproval and criticism to the officers, Plaintiff "flipped them off," extending his middle finger.[1]

7.      Defendant Engle immediately turned and initiated a traffic stop in response to the speech exercised by the Plaintiff. Plaintiff immediately and safely pulled over and came to a stop in the parking lot of Grand Home Furnishings. At about the same time, Defendant Boursiquot joined the traffic stop in a separate police cruiser.

8.      Defendant Engle approached the drivers side of the vehicle while Defendant Boursiquot approached the passenger side.  Defendant Engle identified himself and ask "what's the middle finger, is that a certain hand signal that you gotta give away?"[2]

9.      Plaintiff then raised his middle finger once again, demonstrating the same, and said, "just that." Defendant Engle then said, "just to do it?," and then requested Plaintiff's drivers license registration and proof of insurance.

10.     Plaintiff asked Defendant Engle if his giving him the "middle finger" was the reason he had been pulled over. Defendant Engle responded "yes," and continued to ask for license, registration and proof of insurance. Engle wrote in his police report narrative that Plaintiff admitted to "simply giving [him] the middle finger," and wrote that doing so was "a municipal violation of hand and arm signals 339.10."

_____

[1] Also known as giving them "the bird."

[2] Defendant Engle's full unedited bodycam footage can be viewed here: https://youtu.be/g_CL7YEXDMI.

11.     Upon hearing Defendant Engals acknowledge that he was pulled over in response to his expression of speech, he attempted to remonstrate with the officer, inquiring about the legality of the stop.

12.     Defendant Boursiquot then approached Plaintiff's window, walking from the passenger side of the truck and interrupted the conversation between Engals and Plaintiff, stating, "If I have to say it one more time to provide me the documents, I am going to place you under arrest."[3]

13.     Plaintiff asked Defendant Boursiquot, "under arrest for what?"  In response to Plaintiff's question, without answering, or saying anything else, Defendant Boursiquot said, "get out," and opened Plaintiff's door and placed his hands on him, pulling him out of his truck. Defendant Engle joined in, grabbing Plaintiff's arm and stating, "get out of the car." Plaintiff had not previously been asked to get out of the truck. Nor had Plaintiff previously refused to get out of the truck. Nor had the Defendant Officers given the Plaintiff an opportunity to voluntarily get out of his truck, as they had for the first time asked him to "get out," as they were in the process of already pulling him out.[4]

14.     Contrary to what the defendant officers wrote in their reports, Plaintiff did not refuse to provide his driver's license, registration and proof of insurance. He was questioning the officer's authority to pull him over and detain him in response to his expression of protected free speech. Plaintiff was calm. His window was rolled down. The officers could observe that Plaintiff was not a safety threat.

_____

[3] Defendant Boursiquot had not previously requested Plaintiff's documents.

[4] Defendant Boursiquot's full unedited bodycam can be viewed here: https://youtu.be/csZdGrKQSSA.

15. Plaintiff was then placed under arrest, handcuffed and forcefully shoved by Defendant Boursiquot into the rear of Engle's police cruiser, slamming the door shut. There was no further conversation, questions, or remonstrations.

16. Defendant Engle proceeded to perform a search of the Plaintiff's vehicle, wherein he located Plaintiff's wallet. Engle opened the wallet, pulled out the Plaintiff's license, examined it, and radioed Plaintiff's license number and name to dispatch. The search found nothing illegal in the Plaintiff's vehicle.

17. Plaintiff was then transported to Martinsburg Police Station for processing. Plaintiff's vehicle was towed and impounded.

18. Plaintiff was charged with Improper Hand & Arm Signals, two counts of Obstructing Police, and No Proof of Insurance.

19. Plaintiff was held at the Eastern Regional Jail for 3 days and 4 nights on a $1,211.00 cash only bond.

20. Plaintiff lost his job as a truck driver as a direct and proximate result of his incarceration.

21. Plaintiff's hearing on the criminal violations was held on February 13, 2023, at the Martinsburg Municipal Court, wherein the charges for Improper Hand & Arm Signals, one count of Obstructing Police, and No Proof of Insurance were dismissed. Upon information and belief, the second count of Obstructing Police was dismissed after 90 days.

## COUNT ONE - CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. 1983

## FIRST AMENDMENT VIOLATION

22.     Plaintiff incorporates by reference all of the previous paragraphs.

23.     The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. To establish a claim of retaliation for exercising one's First Amendment rights, a plaintiff must show that (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the plaintiff's exercise of the constitutionally protected activity substantially motivated the defendant's adverse action. Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977).

24.     Using his respective authority under color of state law, Defendant Engle and Defendant Boursiquot subjected Plaintiff to the deprivation of  his rights under the First Amendment by retaliating against him for exercising those rights. Plaintiff was exercising his First Amendment rights on February 10, 2023 when he gave Defendants the "middle finger."  He furthermore additionally exercised free speech when he expressed his belief that he was exercising free speech to Defendant Engle and Defendant Boursiquot during the subject seizure.

25.     Motivated to punish and intimidate the Plaintiff for his exercise of his free speech, Defendant Engle and Defendant Boursiquot engaged in various harmful acts against the Plaintiff in violation of clearly established First Amendment law, resulting in his unlawful seizure.

26.     "Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." Fraternal Order of Police Hobart Lodge #121, Inc. v.

Hobart, 864 F.2d 551, 553 (7th Cir. 1988); *see also* Reichert v. Draud, 701 F.2d 1168, 1170 (6th

Cir. 1983); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (*quoted by*

Davison at 364).

27.    The law is well settled in the Fourth Circuit that retaliation under color of law for

the exercise of First Amendment rights is unconstitutional, and "retaliation claims" have been

asserted in various factual scenarios. Meyers v. City of Cincinnati, 979 F.2d 1154 (6th Cir.1992)

(firemen dismissed); Boger v. Wayne County, 950 F.2d 316 (6th Cir.1991) (county employee in

Medical Examiner's Office transferred); Draud, 701 F.2d at 1170 (change in public school

teacher's duties); Hildebrand v. Board of Trustees, 662 F.2d 439 (6th Cir.1981) (university

professor denied tenure), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982);

Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (prisoner retaliated against

for seeking access to courts).

28.    Here, it is indisputable that Plaintiff was engaging in protected speech and was

wrongfully seized for doing so. It is also indisputable that Defendant Engle and Defendant

Boursiquot unconstitutionally restricted Plaintiff's speech, to the extreme point of seizing him

based solely upon his being upset at Plaintiff for giving them the middle finger. Giving the

"middle finger" is a well-known gesture that equates to saying, "fuck you." The the law is clearly

established that an individual has a First Amendment right to express profanity during an

interaction with law enforcement. *See* Cohen v. California, 403 U.S. 15 (1972); see also Lewis v.

City of New Orleans, 415 U.S. 130 (1974) (The U.S. Supreme Court reversed a conviction under

a Louisiana statute that had provided that "It shall be unlawful and a breach of the peace for any

person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.").

29.     Defendant Engle and Defendant Boursiquot's unconstitutional acts, motivated by retaliatory animus, directly harmed the Plaintiff by chilling his ability to exercise his First Amendment rights.

30.     Had it not been for the retaliatory animus, Defendant Engle and Defendant Boursiquot would never have seized and held in handcuffs and arrested the Plaintiff on February 10, 2023. There is a causal connection between Plaintiff's protected speech and the adverse actions, in part because the defendant officers admit that Plaintiff's speech is the reason they were engaging in the adverse actions. But for the protected speech engaged in by the Plaintiff, he would not have been detained and arrested by the defendant officers. See, e.g., Tobey v. Jones, 706 F.3d 379, 390 (4th Cir. 2013).

31.     Defendant Engle and Defendant Boursiquot thus violated Plaintiff's clearly established First Amendment rights, as set forth in Hupp v. State Trooper Seth Cook, 931 F.3d 307 (4th Cir. 2019). The Defendant Officers, acting under color of law, retaliated against Plaintiff for this protected speech by engaging in several adverse actions that would deter a person of ordinary firmness from engaging in such protected speech, including, without limitation, by detaining him and then arresting, charging and prosecuting him, all without probable cause.

32.     Plaintiff suffered damages as a direct and proximate result of the foregoing, for which he is entitled to recover.

**COUNT TWO - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983**

**VIOLATION OF THE FOURTH AMENDMENT**

33.    The previous paragraphs are hereby incorporated by reference as though fully restated herein.

33.    On February 10, 2023, Defendant Engle and Defendant Boursiquot effected the warrantless seizure of the Plaintiff following a traffic stop based upon Plaintiff giving the Defendant's the middle finger.

34.    Defendant Engle and Defendant Boursiquot seized the Plaintiff  and searched him without a warrant, without probable cause, and without reasonable suspicion to believe that Plaintiff had committed any crime. Rather, the seizure was based merely upon Defendant Engle and Defendant Boursiquot retaliation against Plaintiff's exercise of free speech.

35.    Although brief encounters between police and citizens require no objective justification, United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002), it is clearly established that an investigatory detention of a citizen by an officer must be supported by reasonable articulable suspicion that the individual is engaged in criminal activity. Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. 1868 (1968).

36.    An individual is "seized" within the meaning of the Fourth Amendment when either he is told that he is not free to leave, or when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Gray, 883 F.2d 320, 322 (4th Cir. 1989). Here, Plaintiff was clearly seized inasmuch as Defendant Engle and Defendant Boursiquot not only told Plaintiff that he was detained, but he was also handcuffed in the back of the police cruiser in an unreasonable manner.

37. To be lawful, a <u>Terry</u> stop "must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." <u>Reid v. Georgia</u>, 448 U.S. 438, 440, 100 S. Ct. 2752 (1980). The level of suspicion must be a "particularized and objective basis for suspecting the particular person stopped of criminal activity." <u>United States v. Griffin</u>, 589 F.3d 148, 152 (4th Cir. 2009). As such, "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." <u>Terry</u>, 392 U.S. at 21, 88 S. Ct. 1868.

38. There was no legal basis for the seizure of the Plaintiff on or about February 10, 2023, as described above. No objectively reasonable police officer would have reason to believe they have authority to conduct a seizure under the circumstances that existed here. The defendant's actions as alleged herein were done under color of law, objectively unreasonable, willful, wanton, intentional and done with a callous and reckless disregard for the Plaintiff's First Amendment rights. Moreover, there existed no information indicating that Plaintiff was armed or dangerous, or that he was a safety threat to any individual, including Defendant Engle and Defendant Boursiquot.

39. Defendant Engle and Defendant Boursiquot seized Plaintiff solely in retaliation for the Plaintiff's exercise of free speech. Plaintiff violated no criminal or traffic law that would have been apparent to an objectively reasonable police officer. As a direct and proximate result of Defendant's actions as set forth above, Plaintiff suffered harm, including attorney fees and expenses, for which he is entitled to recover.

## COUNT THREE - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983

## VIOLATION OF THE FOURTH AMENDMENT - FALSE ARREST

40.    The previous paragraphs are hereby incorporated by reference as though fully restated herein.

41.    At the time of the Plaintiff's arrest, the facts and circumstances within the defendants' joint knowledge, were not sufficient to warrant any reasonably prudent police officer to believe that under the circumstances present at the time, that plaintiff had violated any criminal statute or committed any criminal offense.

42.    No reasonable police officer in either of the defendant police officers' positions on February 10, 2023, would have believed that probable cause existed to make a warrantless arrest of the Plaintiff under the totality of the circumstances as described in the above paragraphs.

43.    The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause. Dunaway v. New York , 442 U.S. 200, 213, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Thus, "[i]f a person is arrested when no reasonable officer could believe ... that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001) (citation omitted).

44.    "Probable cause is determined by a 'totality-of-the-circumstances' approach." Smith v. Munday , 848 F.3d 248, 253 (4th Cir. 2017) (citing Illinois v. Gates , 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). The inquiry "turns on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that

conduct.' " Id. (quoting Graham v. Gagnon , 831 F.3d 176, 184 (4th Cir. 2016) ). While the court looks to the information available to the officer on the scene at the time, the courts apply an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest. Graham , 831 F.3d at 185. Evidence sufficient to secure a conviction is not required, but probable cause exists only if there is sufficient evidence on which a reasonable officer at the time could have believed that probable cause existed for the arrest. Wong Sun v. United States , 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

45.     The alleged charge of "hand and arm signals" was wholly inapplicable to the circumstances and could not have formed the justification necessary for the warrantless arrest of the Plaintiff - nor the basis for the traffic stop itself. The municipal violation alleged provides as follows:

> 339.10 HAND AND ARM SIGNALS.
> Al signals herein required given by hand and arm shall be given from the left side of the vehicle ni the folowing manner and such signals shal indicate as folows:
> (a) Left Turn: Hand and arm extended horizontally.
> (b) Right Turn: Hand and arm extended upward.
> (c) Stop or Decrease Speed: Hand and arm extended downward.

46.     While the defendant officers both included misleading statements in their reports, alleging that Plaintiff had somehow improperly signaled a turn, they were aware that Plaintiff had never signaled a turn, but rather was giving them the middle finger, which the bodycam of Defendant Engle confirms, wherein he admits to pulling over Plaintiff in retaliation for his giving of the middle finger.[5]

_____

[5] See Engle Bodycam at 11:17:19.

47.     Moreover, the Defendant Officers "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." <u>Miller v. Prince George's Cty.</u>, 475 F.3d 621, 627 (4th Cir. 2007). They therefore cannot rely on any magistrate or judge's finding of probable cause as a defense to the claim herein.

48.     Accordingly, the frivolous charge of "hand and arm signals" was subsequently dismissed.

49.     The Defendant Officers did not observe, nor have reasonable suspicion to believe, that Plaintiff had committed any other violation. Therefore they had no justification to detain the Plaintiff and demand his driver's license, registration and proof of insurance.

50.     Even if they did have reasonable suspicion to conduct the traffic stop of the Plaintiff, they did not have probable cause to believe that he committed obstruction.

51.     The municipal charge of obstruction within the City of Martinsburg is based on West Virginia's obstruction statute. On the charge of allegedly obstructing an officer, in violation of WV Code § 61-5-17(a), the plain language of the statute establishes that a person is guilty of obstruction when he, "by threats, menaces, acts or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer, probation officer or parole officer acting in his or her official capacity." The Fourth Circuit recently examined the statute:

> As West Virginia's high court has "succinct[ly]" explained, to secure a conviction under section 61-5-17(a), the State must show "forcible or illegal conduct that interferes with a police officer's discharge of official duties." <u>State v. Davis</u>, 229 W.Va. 695, 735 S.E.2d 570, 573 (2012) (*quoting* <u>State v. Carney</u>, 222 W.Va. 152, 663 S.E.2d 606, 611 (2008)). Because conduct can obstruct an officer if it is either forcible or illegal, a person may be

guilty of obstruction "whether or not force be actually present." <u>Johnson</u> , 59 S.E.2d at 487. However, where "force is not involved to effect an obstruction," the resulting obstruction itself is insufficient to establish the illegality required by section 61-5-17. <u>Carney</u> , 663 S.E.2d at 611. That is, when force is not used, obstruction lies only where an illegal act is performed. This is because "lawful conduct is not sufficient to establish the statutory offense." <u>Id</u>.

Of particular relevance to our inquiry here, West Virginia courts have held that "when done in an orderly manner, merely questioning or remonstrating with an officer while he or she is performing his or her duty, does not ordinarily constitute the offense of obstructing an officer." <u>State v. Srnsky</u>, 213 W.Va. 412, 582 S.E.2d 859, 867 (2003) (*quoting* <u>State ex rel. Wilmoth v. Gustke</u>, 179 W.Va. 771, 373 S.E.2d 484, 486 (W. Va. 1988)).

For example, the Supreme Court of Appeals has found that no obstruction is committed when a property owner asks a law enforcement officer, "without the use of fighting or insulting words or other opprobrious language and without forcible or other illegal hindrance," to leave her property. <u>Wilmoth</u> , 373 S.E.2d at 487. This principle is based on the First Amendment "right to question or challenge the authority of a police officer, provided that fighting words or other opprobrious language is not used." <u>Id</u>. ; *see* <u>Graham</u> , 831 F.3d at 188 ("Peaceful verbal criticism of an officer who is making an arrest cannot be targeted under a general obstruction of justice statute ... without running afoul of the First Amendment." (citation omitted)).

<u>Hupp v. State Trooper Seth Cook</u>, 931 F.3d 307 (4th Cir. 2019).

52.     The body camera footage of the incident shows that Plaintiff was polite and cooperative when interacting with the defendant officers. He merely questioned Defendant Engle as to what crime had he committed why he might be under arrest for giving the middle finger, which is not a crime. Furthermore, at no time did plaintiff verbally refuse to get out of the vehicle. Such conduct does not amount to "forcible or illegal conduct that interferes with a police officer's discharge of official duties." <u>State v. Davis</u>, 229 W.Va. 695, 735 S.E.2d 570, 573 (2012) (*quoting* <u>State v. Carney</u>, 222 W.Va. 152, 663 S.E.2d 606, 611 (2008)).[6]

---

[6] Plaintiff was also charged with not having insurance, which was subsequently dismissed. However, he was already arrested prior to the officers obtaining any theoretical basis with which to charge Plaintiff with said violation.

53.     No reasonable officer would have believed that probable cause existed for the warrantless arrest of Plaintiff on February 10, 2023. Plaintiff was merely questioning Defendants' authority to effect a seizure of him for doing something which he possessed a constitutional right to do. At no time did Plaintiff obstruct or hinder any police officer, forcibly or otherwise.

54.     As a direct and proximate result of the Defendant Officers' actions, Plaintiff suffered damages, for which he is entitled to recover.

## COUNT FOUR- MONELL CLAIM AGAINST THE CITY OF MARTINSBURG

55.     The previous paragraphs are hereby incorporated by reference as though fully restated herein.

56.     The City of Martinsburg, which is the political subdivision under which the Martinsburg Police Department operates, is constitutionally charged and responsible for the training and supervision of employees of the Department. The Commission is also constitutionally charged and responsible for the promulgation of policies for the Martinsburg Police Department.

57.     The actions of Defendant Engle and Defendant Boursiquot, employees of the Martinsburg Police Department, of violating Plaintiff's First Amendment rights on February 10, 2023, is reflective of the failure of the Martinsburg Police Department's policies, training, and practices, which even after February 10, 2023, were not sufficiently altered or rectified. Upon information and belief, said constitutionally deficient policies remain in place.

58.    On February 10, 2023, the Martinsburg Police Department maintained a policy and practice of wherein officers are authorized to seize motorists in the absence of reasonable suspicion, and in retaliation for engaging in the protected free speech of giving the finger or other protected free speech critical to law enforcement.

59.    Upon information and belief, officers with the Martinsburg Police Department has previously engaged in the unconstitutional retaliation against motorists who expressed criticism of police officers, or questioned their authority. This includes, but is not limited to, the August 23, 2021 arrest of D.J. Beard by the Martinsburg Police Department, under similar circumstances.

60.    Upon information and belief, the Martinsburg Police Department continues to have a policy and practice in place of unlawfully seizing motorists who exercise free speech, such as Plaintiff did on February 10, 2023.

61.    As a direct and proximate result of the said policy, custom and practice, the Plaintiff was damaged as described herein, for which he is entitled to recover.

**PRAYER**

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1.    Damages against the Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for:

2.    Punitive damages against the individual Defendants in an amount to be determined at trial;

3.    Reasonable attorney fees and costs;

16

4.      Any other relief that this Court deems is just and fair;

5.      All other damages provided by law;

6.      Injunctive relief requiring appropriate training, supervision and discipline in

order to remedy all constitutional deprivations which the Plaintiff suffered;

**PLAINTIFF DEMANDS A TRIAL BY JURY**

COREY J. LAMBERT,
By Counsel

/s John H. Bryan_____
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Plaintiff